## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### ROCK ISLAND DIVISION

| | |
|---|---|
| BRANDON MOTTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:21-cv-04093 |
| ) | |
| CORY RUARK, *et al.* ) | |
| ) | |
| Defendants. ) | |

## **ORDER**

Plaintiff, then proceeding *pro se*, brought the present lawsuit pursuant to 42 U.S.C. § 1983 alleging a Fourteenth Amendment claim for failure to protect from harm. The matter comes before this Court for ruling on the parties' respective motions *in limine*, (Docs. 137, 138), and other issues related to the upcoming trial.

### LEGAL STANDARD FOR MOTIONS IN LIMINE

A district court has broad discretion in ruling on evidentiary questions presented before trial. *Jenkins v. Chrysler Motor Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). The moving party bears the burden of showing that the evidence sought to be excluded is clearly inadmissible for any purpose. *Mason v. City of Chicago*, 631 F. Supp. 2d 1052, 1056 (N.D. Ill. 2009). A district court may alter a pretrial ruling regarding the admissibility of evidence should it become necessary as the trial progresses. *Perry v. City of Chicago*, 733 F.3d 248, 252 (7th Cir. 2013).

**DEFENDANT'S MOTION IN LIMINE (DOC. 137)**

*Motion in Limine No. 1*

Defendant seeks an order barring "any lay witness from giving medical opinions on diagnoses, causation, and the necessity of treatment regarding Plaintiff's claims of injury." (Doc. 137 at 3).

A lay witness may offer opinion testimony to the extent that it is rationally based on the witness' perception, helpful in determining a fact at issue, and not based upon scientific evidence. Fed. R. Evid. 701. Expert testimony is also not required "to assist jurors in determining the cause of injuries that are within their common experiences or observations." *Hendrickson v. Cooper*, 589 F.3d 887, 892 (7th Cir. 2009).

Plaintiff may accordingly testify as to where he was struck during the incident in question, whether and in what part of his body he experienced pain thereafter, and the severity and duration of that pain. Defendant has not identified any specific expert or medical opinion testimony Plaintiff seeks to introduce at trial, aside from the fact that Plaintiff may use the terms "migraine" and "head pain" interchangeably. Any issues arising from that testimony are likely to be resolved on cross examination. Defendant's request is denied.

*Motion in Limine No. 2*

Defendant seeks to admit evidence regarding Plaintiff's criminal history. Defendant's request is granted in part and denied in part as outlined in the Court's

ruling, *infra*, on Plaintiff's Motion in Limine request no. 1 involving the same evidence.

### *Motion in Limine No. 3*

Defendant seeks to bar evidence regarding any indemnification he may receive from the County or payment of any judgment by the County's insurer. Plaintiff does not object. The request is granted. *See* Fed. R. Evid. 411.

### *Motion in Limine No. 4*

Defendant seeks to bar Plaintiff from making "golden rule" or "guardians of the community" arguments or admitting evidence along these lines. A "golden rule" argument is an argument "in which the jury is asked to put itself in the plaintiff's position." *United States v. Teslim*, 869 F.2d 316, 328 (7th Cir. 1989). A "guardians of the community" argument asks jurors to discharge their duties within the context of protecting the community. *Smith v. City of Chicago*, 2025 WL 1744919, at *23 (N.D. Ill., filed Jun. 24, 2025). Both arguments have been found improper. *Id.*; *Teslim*, 869 F.2d at 328 (a "golden rule" argument is "universally recognized as improper because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence.").

Plaintiff states that he does not intend to make either argument, *see* (Doc. 142 at 6), and, therefore, Defendant's request is granted insofar as it relates to such arguments. The record does not disclose any specific testimony or evidence that would fall under these types of arguments. Defendant's request is denied as to any other relief requested.

*Motion in Limine No. 5*

Defendant seeks an order barring previously undisclosed witnesses, opinions, or documents. Plaintiff does not object. Defendant's request is granted.

*Motion in Limine No. 6*

Defendant seeks an order barring argument or reference to punishing or "sending a message" to Rock Island County, the Rock Island County Sheriff's Office, or law enforcement generally. Plaintiff states that he does not intend to assert an argument as it relates to these organizations or Defendant. Plaintiff objects as it relates to arguments regarding punitive damages.

Defendant's request is granted to the extent that it seeks to bar argument as it relates to the organizations mentioned above. Defendant's request is denied as to any other relief requested. Nothing in this Order shall prohibit Plaintiff from asserting arguments related to any factor properly considered with respect to punitive damages.

*Motion in Limine No. 7*

Defendant seeks an order precluding improper character evidence against him, including disciplinary records and unrelated lawsuits filed against him. Defendant has not identified any specific information he seeks to exclude, and, absent such information, the Court finds that Defendant has not shown this information is not admissible for any purpose. Any determinations regarding the admissibility of this evidence are best reserved for trial. Defendant's request is denied.

*Motion in Limine No. 8*

Defendant seeks an order precluding an argument that Plaintiff waited a long time for justice or other reference to the length of time this case has been pending. Plaintiff does not object. Defendant's request is granted as it relates to arguments related to the passage of time.

*Motion in Limine No. 9*

Defendant seeks an order precluding evidence or argument about alleged violations of jail policies. Plaintiff states that he intends to offer evidence "detailing Defendant's violations of jail policies and procedures to demonstrate the actions of a reasonable officer." (Doc. 142 at 12). Plaintiff elaborates that he "should be permitted to introduce the policies to show that Defendant failed to conduct himself as a reasonable officer when allowing an inmate to go unescorted to his cell while Mr. Motton was on his one-hour out." *Id.* at 13.

"[A] violation of a jail policy is not a constitutional violation enforceable under 42 U.S.C. § 1983." *Pulera v. Sarzant*, 966 F.3d 540, 551 (7th Cir. 2020). Because the objective reasonableness analysis requires the trier of fact to consider the facts and circumstances specific to each case, the Seventh Circuit has held that evidence regarding institutional policies and the violations of same are not relevant to this inquiry. *Thompson v. City of Chicago*, 472 F.3d 444, 455 (7th Cir. 2006) ("[T]he violation of police regulations or even a state law is completely immaterial as to the question of whether a violation of the federal constitution has been established."); *Rakes v. Roederer*, 117 F.4th 968, 985 (7th Cir. 2024) (same); *see also Kingsley v.*

*Hendrickson,* 576 U.S. 389, 397 (2015) ("[O]bjective reasonableness turns on the facts and circumstances of each particular case…A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight.") (internal citations omitted).

Plaintiff's proposed reasons for introducing evidence regarding Defendant's alleged violations of jail policy suggest an argument that the policies define how a reasonable officer should act, and that Defendant's violations of those policies mean that his actions were unreasonable. This is just a different way of saying that Defendant's violation of a jail policy makes his conduct unconstitutional, which is not consistent with the applicable law or permissible argument.

Defendant's request is granted to the extent that it seeks to bar evidence that Defendant violated a jail policy and argument that the violation of same made Defendant's actions unreasonable or unconstitutional.

*Motion in Limine No. 10*

Defendant seeks an order barring testimony from Plaintiff's Jail Practices Expert. Plaintiff retained Arthur Wallenstein as an expert in this case. Mr. Wallenstein's expert report makes five findings:

> **Finding #1**: A reasonable officer would have checked whether an inmate being transferred was going to segregated housing and adjusted the transportation methods accordingly. CO Ruark failed to check Hayes's housing classification before transferring in violation of industry practice and common knowledge, and thus, Ruark did not take reasonable measures when transferring Hayes on March 25, 2021, such as using restraints or transferring individually (not in a group).

**Finding #2**: A reasonable officer would have checked an inmate's behavior history before transferring and adjusted the transportation methods accordingly. CO Ruark failed to check Hayes's behavioral history, which included three prior fights, including a fight the day prior, and thus, CO Ruark should have used his discretion under RICJ policy that authorizes restraints "if the Officer has reason to believe that the inmate may become uncooperative/combative," to restrain Hayes during the transfer on March 25, 2021.

**Finding #3**: A reasonable officer would have escorted, controlled, and supervised an inmate from point A to point B in alignment with industry standards and customs, RICJ's policy, the practices of other RICJ officers, and common sense. A reasonable officer would have appreciated the risk of violence to others at the jail when allowing an inmate to be unescorted, uncontrolled, and unsupervised. CO Ruark failed to fully escort, control, and supervise Inmate Hayes while transferring him on March 25, 2021, by not escorting Mr. Hayes to his cell and ensuring the cell was locked. CO Ruark testified under oath that fighting was "routine" at RICJ, and thus, permitting inmates, who are required to be segregated from others, to interact inherently creates a risk of violence.

**Finding #4**: A reasonable correctional officer would have recognized that inmates in segregation should not interact outside of very limited circumstances, and thus, upon seeing another inmate in the dayroom, the officer would have taken steps to avoid the inmates interacting such as ordering the inmate in the dayroom to his cell or taking other steps to ensure the two inmates did not interact. CO Ruark clearly saw Motton before allowing Hayes into Lower N, and so, he consciously chose not to abate the risk of these two inmates, who were both in protective custody in segregated housing, interacting.

**Finding #5**: A reasonable correctional officer would call for support and then immediately intervene when an inmate they were supervising was attacked right in front of him in order to minimize injuries and potential loss of life. CO Ruark should have entered the unit, Lower N, the moment he realized his error in permitting another Special Management inmate to enter the Dayroom and invade the presence of another inmate who was using the phone as part of the one-hour standalone recreation period permitted for inmates within the Special Management Unit (Lower N). He did not come to the aid of inmate Motton as Motton was being attacked. CO Ruark waited a considerable amount of time when he was personally on-site and could have utilized his 20 years of experience to intervene and assist inmate

>Motton while awaiting the arrival of other correctional officers to assist.

(Doc. 137-2 at 2-4). Defendant argues that Mr. Wallenstein's findings are improper legal conclusions that will not assist the jury to understand the evidence and resolve any issues of fact. Plaintiff asserts that the testimony will "provide[] the jury with context to understand the actions of a 'reasonable officer,' by explaining the training, policies, and national standards, related to the types of housing and transportation options that affect the movement of an inmate within the jail." (Doc. 142 at 15).

>Federal Rule of Evidence 702 provides:
>
>A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
>(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
>(b) the testimony is based on sufficient facts or data;
>
>(c) the testimony is the product of reliable principles and methods; and
>
>(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The rule imposes a "special gatekeeping function" on district courts to ensure that the evidence is relevant and reliable before admitting it. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 588-89 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999); *see also Lees v. Carthage Coll.*, 714 F.3d 516, 521 (7th Cir. 2013) ("[T]he *Daubert* analysis applies to *all* expert testimony under Rule 702, not just scientific testimony."). In doing so, district courts

must evaluate: (1) the proffered expert's qualifications; (2) the reliability of the expert's methodology; and (3) the relevance of the expert's testimony." *Kirk v. Clark Equip. Co.*, 991 F.3d 865, 872 (7th Cir. 2021). Expert testimony is relevant if it will assist the jury "to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Defendant does not challenge the Plaintiff's expert's qualifications or methodology in his motion.

As discussed above, *Thompson* and other Seventh Circuit jurisprudence hold that evidence of a policy violation is immaterial to the question of objective reasonableness. The Seventh Circuit in *Thompson* also affirmed the district court's exclusion of expert testimony from a police sergeant that would have offered an opinion about the reasonableness of the officer's conduct based in part on the policies at issue in that case. *Thompson*, 472 F.3d at 457. The Seventh Circuit held that presentation of the expert testimony in question "would have induced the jurors to substitute their own independent conclusions for that of the experts." *Id.*

The Seventh Circuit later clarified in *United States v. Brown*, that *Thompson* should not be understood to categorically prohibit all evidence related to policies and procedures. 871 F.3d 532, 537 (7th Cir. 2017). "Even though jurors can understand the concept of reasonableness, in some cases they may not fully grasp particular techniques or equipment used by police officers in the field." *Id.* In cases where expert testimony can "help the trier of fact to understand the evidence or to determine a fact in issue," this type of testimony may be permissible under Fed. R. Evid. 702. *Id.* The Seventh Circuit explained further:

> The level of factual complexity in the case may also bear on the relevance of expert testimony about police practices or protocols. In many cases evaluating an officer's conduct will draw primarily on the jury's collective common sense. The everyday experience of lay jurors fully equips them to answer the reasonableness question when a case involves facts that people of common understanding can easily comprehend. The jury's common experience will suffice, for example, when police use their bare hands in making an arrest, the most primitive form of force. But when "something peculiar about law enforcement (*e.g.*, the tools they use or the circumstances they face) informs the issues to be decided by the finder of fact, a juror's everyday experience may not be enough to effectively assess reasonableness. If a case involves "a gun, a slapjack, mace, or some other tool, the jury may start to ask itself: what is mace? what is an officer's training on using a gun? how much damage can a slapjack do?

*Id.* at 538 (internal quotations and citations omitted). This case does not involve police procedures or protocols, but the holdings in *Thompson* and *Brown* are sufficiently analogous for the Court to find them controlling.

The parties agree that jail officials housed Plaintiff in Lower N, an area of the jail "used for inmates who must be separated from other inmates for disciplinary, administrative, or protective custody reasons." (Doc. 71 at 3). Expert testimony is not required for jurors to appreciate the fact that detainees may sometimes need to be housed separately from others and that the jail has dedicated an area for that purpose. The reasons for this type of confinement (violation of a rule, poses a safety threat to self or others, protective custody, and medical) are also not beyond a juror's common experience or comprehension.

This case does not involve the use or non-use of restraints outside of handcuffs that may require an expert's explanation, nor does the relevance a detainee's prior history may have in determining the risk of harm the detainee presents to others. Two of Mr. Wallenstein's findings directly contradict the law in

this circuit. *Compare* Findings #3 and #5, *infra, with Giles v. Tobeck*, 895 F.3d 510, 513-14 (7th Cir. 2018) (failure to escort inmate back to cell "did not cross the line from negligently enabling the attack to recklessly condoning it," and decision to wait for backup once fight started was not unreasonable).

The Court finds that Mr. Wallenstein's expected testimony is not likely to assist the jurors in resolving any issues of fact and that presentation of his testimony unnecessarily risks that the jury will decide the case on an improper basis. Defendant's request is granted.

### PLAINTIFF'S MOTION IN LIMINE (DOC. 138)

### *Motion in Limine No. 1*

Plaintiff seeks an order excluding: "(1) the details of Mr. Motton's felony convictions for murder and possession of a firearm that occurred within the past ten years; (2) Mr. Motton's convictions from more than ten years ago; and (3) any other criminal conviction punishable by less than one year or charge that never resulted in a conviction." (Doc. 138 at 4). Plaintiff requests that the Court limit evidence of his prior convictions to "the basic fact that he has been convicted of two felonies and is currently serving a sentence in excess of one year in the Illinois Department of Corrections." *Id.* at 3. Defendant argues that identifying "the particular felony charged, the date, and the disposition" should be allowed. (Doc. 140 at 2).

Evidence of criminal convictions for crimes punishable by more than one year imprisonment or convictions for crimes involving a dishonest act or false statement are admissible for impeachment purposes, unless the court finds that the evidence

is more prejudicial than probative or more than 10 years has passed since the date of conviction or release from confinement. Fed. R. Evid. 403, 609(a)-(b). The parties concede that Plaintiff's convictions for murder and possession of a firearm are of the types of convictions admissible under Fed. R. Evid. 609.

A court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Evidence is unfairly prejudicial if it appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or otherwise may cause a jury to base its decision on something other than the established propositions in the case." *United States v. Thompson*, 359 F.3d 470, 479 (7th Cir. 2004) (internal quotation marks omitted). Factors the court should consider include: "(1) the impeachment value of the prior crime; (2) the point in time of the conviction and the [party's] subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the [party's] testimony; and (5) the centrality of the credibility issue." *United States v. Gant*, 396 F.3d 906, 909 (7th Cir. 2005). (internal quotation omitted).

Plaintiff's convictions for murder and possession of a firearm are not crimes of dishonesty and have no relation to the facts of this case. *Jones v. City of Chicago*, 2017 WL 413613, at *9 (N.D. Ill., filed Jan. 31, 2017) ("Murder is not a crime that is particularly indicative of untruthfulness."). The video depicting the incident removes most, if not all, question regarding the parties' physical actions. Plaintiff

Page **12** of **18**

does not have personal knowledge of Defendant's interactions with his assailant or any event that transpired outside the area of the jail where the event took place, and the parties do not appear to dispute facts where Plaintiff's credibility would play a material role in the jury's determination.

The Court finds that testimony or evidence regarding the details of Plaintiff's convictions would be unfairly prejudicial in this case. Plaintiff's request is granted. Defendant may elicit testimony or other evidence only to the facts that Plaintiff has been convicted of two felonies and that he is currently serving a sentence that exceeds one year. *See Byrd v. Hobart*, 2022 WL 2388728, at *3 (C.D. Ill., filed Mar. 1, 2022) (limiting evidence at trial to the fact that the plaintiff had committed a felony, without divulging the exact nature of the crime, and that the conviction predicated his confinement in IDOC).

### *Motion in Limine No. 2*

Plaintiff seeks an order precluding evidence related to "medical treatment, diagnoses, or medication prescribed to Mr. Motton predating March 25, 2021, or related to his mental health." (Doc. 138 at 8). The fact that Plaintiff's diagnoses and treatment may have predated the events in question does not automatically make them irrelevant or otherwise inadmissible. These conditions may be relevant to the calculation of damages. Plaintiff's request is denied.

### *Motion in Limine No. 3*

Plaintiff seeks an order precluding "Defendant from introducing into evidence, offering any testimony about, or referring to his prison disciplinary record

or incident reports and grievances unrelated to his request for protective custody at Rock Island County Jail…and any unproduced records." (Doc. 138 at 10). Defendant states that he does not intend to admit Plaintiff's disciplinary records or requests about "unrelated matters such as visitation or food orders," and, therefore, does not object to the request as it relates to these documents. (Doc. 140 at 6).

Plaintiff's request is granted as to Plaintiff's disciplinary records and requests related to visitation and food orders and denied as to any other relief requested.

### *Motion in Limine No. 4*

Plaintiff seeks an order precluding evidence regarding "the alleged injuries sustained by Correctional Officer Nelson while restraining Mr. Motton" during the incident in question. The parties agree that C/O Nelson broke his jaw during the incident and that there exists no conclusive evidence regarding who caused this injury.

C/O Nelson's injury occurred after Defendant had allowed the other inmate to enter the common area while Plaintiff was present. The fact that C/O Nelson sustained an injury thereafter does not bear on the question of whether Defendant's conduct prior to that injury was objectively reasonable. Plaintiff's request is granted.

### *Motion in Limine No. 5*

Plaintiff seeks to bar evidence of Defendant's good character, "such as any personal and professional accomplishments" to show that Defendant acted in

Page **14** of **18**

accordance with that character on the date in question or to prove that he did not fail to protect Plaintiff.

The Federal Rules of Evidence prohibit character evidence for purposes of showing that the person acted in accordance therewith. Fed. R. Civ. P. 404. Defendant indicates that he does not oppose the request insofar as it seeks to prohibit evidence of "commendations and awards he received a Correctional Officer." (Doc. 140 at 8). Plaintiff's request as to this evidence is granted.

Defendant objects to Plaintiff's request as it relates to "basic career and background information," including his service in the military. Defendant argues he should be allowed to testify regarding his basic military duties, any promotions, and whether he received an honorable discharge because the absence of such information "would raise suspicion in the jury's mind." *Id.*

Brief testimony regarding an officer's military service is generally appropriate "to provide a complete picture to the jury of the officer's professional background." *Holt v. Lewsader*, 2021 WL 4094996, at *14 (C.D. Ill., filed Apr. 19, 2021); *Valdez v. Lowry*, 2021 WL 5769533, at *15 (N.D. Ill., filed Dec. 5, 2021) ("The military service of plaintiff (and defendant officers, for that matter) is appropriate background evidence."). Plaintiff's request is denied as to any remaining relief requested.

### *Motion in Limine No. 6*

Plaintiff seeks an order permitting him to appear in civilian clothing without restraints. Defendant does not object to the request as it relates to clothing, or to an

order permitting Plaintiff to appear without visible restraints. Plaintiff's request is granted as to the clothing and for Plaintiff to appear before the jury within visible restraints and denied as to any other relief requested. The Court will make a final determination regarding the extent of Plaintiff's restraints after consultation with security staff.

*Motion in Limine No. 7*

Plaintiff seeks an order directing counsel and witnesses to refer to Plaintiff only as "Mr. Motton." Defendants ask the Court to permit them and witnesses to refer to Plaintiff as "plaintiff" or "Motton." Reference to an individual as plaintiff or defendant, or simply by a last name, is common practice. Calling Plaintiff by these monikers, or even the occasional reference to Plaintiff as a detainee or inmate do not appear to be unfairly prejudicial within the context of this case. Plaintiff's request is denied.

**PROPOSED FINAL PRETRIAL ORDER (DOC. 141)**

The parties submitted a joint proposed final pretrial order on November 12, 2025. (Doc. 141). At the final pretrial conference held November 17, 2025, Defendant indicated that the proposed order did not reflect his intention to waive authentication for certain exhibits. Plaintiff indicated that, in light of Defendant's waiver, he does not intend to call a custodian of records as a witness to authenticate the documents in question.

The Court also discussed with the parties an objection pursuant to Rule 26(a) that Plaintiff had indicated in the proposed final pretrial order to testimony from

Brett Josie and Melissa Fletcher. Plaintiff's counsel stated at the final pretrial conference that he would withdraw his objection as to Melissa Fletcher.

Plaintiff stated that he had disclosed Brett Josie in his supplemental Rule 26 disclosures after the Court had reopened discovery. He stated that because Defendant did not disclose Mr. Josie as a witness that he made a "strategic decision" not to depose this witness. Plaintiff asserts that he accordingly does not know to what Mr. Josie will testify, and, therefore, permitting Defendant to call this witness is prejudicial.

Rule 26 requires a party to disclose the name of every individual "likely to have discoverable information…that [the party] may use to support its claims or defenses," and to identify "the subjects of that information." Fed. R. Civ. P. 26(a)(1)(A)(i). Parties have an ongoing duty to supplement these disclosures "in a timely manner" if the party learns new information or discovers that previous disclosure is somehow deficient and "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A).

A party that fails to comply with these disclosure requirements "is not allowed to use that information or witness to supply evidence…at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Exclusion is "automatic and mandatory" unless the noncomplying party can show its violation was either justified or harmless. *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).

The parties do not appear to dispute that Defendant failed to disclose Mr. Josie as a witness, and that that failure affected Plaintiff's litigation strategy. The question before the Court hinges on whether Plaintiff's disclosure and Mr. Josie's presumed inclusion in discovery documents relieved Defendant of his duty to disclose him under the "otherwise been made known" exception in Fed. R. Civ. P. 26(e)(1)(A), and, if not, whether the failure to disclose was justified or harmless. The Court will provide the parties an opportunity to submit argument or authority on the issue as they deem necessary.

## Conclusion

The parties' respective motions in limine (Docs. 137, 138) are granted in part and denied in part. The parties shall submit a revised proposed final pretrial order to reflect the changes discussed at the final pretrial conference and any argument or authority on the witness issue as directed below.

**THEREFORE:**

1) **The parties' respective motions *in limine* [137][138] are GRANTED in part and DENIED in part.**

2) **The parties shall submit a revised proposed final pretrial order by December 1, 2025.**

3) **The parties shall submit any argument or authority on the issue of whether Brett Josie should be permitted to testify by December 1, 2025.**

*SO ORDERED.*

Entered this 20th day of November, 2025.

                                                                                 s/Ronald L. Hanna
                                                                                  Ronald L. Hanna
                                                               United States Magistrate Judge